2024 IL App (1st) 240475-U

FIRST DISTRICT,
FIRST DIVISION
May 20, 2024

No. 1-24-0475B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 07 CR 22861 |
| ROBERT BARNES, | ) ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Thomas Byrne, Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justice Pucinski concurred in the judgment.
Presiding Justice Fitzgerald Smith specially concurred.

**ORDER**

¶ 1    *Held*:   We reverse and remand for the trial court to conduct further proceedings in compliance with Section 110-6.1(h)(1) of the Pretrial Fairness Act.

¶ 2    Defendant Robert Barnes appeals from the trial court's February 9, 2024, order continuing his pretrial detention pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) as recently amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1(a)(1), (6) (West 2022)), and commonly referred to as "the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" or the "Pretrial Fairness Act" (Act). See also Ill. S. Ct.

R. 604(h) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4            This appeal stems from the September 25, 2007, shooting of the victim Regis McWright in front of defendant's home at 1424 North Laramie Avenue in Chicago. Following a jury trial, defendant was convicted of first-degree murder and sentenced to 45 years' imprisonment. On direct appeal, the appellate court rejected defendant's argument that the trial court erred in refusing to instruct the jury on defense of one's dwelling as a justification for the use of deadly force because no evidence showed that an entry occurred. See *People v. Barnes*, No. 1-09-1535 (2010) (unpublished under Supreme Court Rule 23).

¶ 5            During the subsequent postconviction proceedings, defendant argued that his trial counsel was ineffective for failing to request that the jury be instructed on the justified use of deadly force to prevent a felony within his dwelling (720 ILCS 5/7-2(a)(2), 9-2(a)(2), (c) (West 2006)), and that appellate counsel was ineffective for failing to raise this issue on direct appeal. See *People v. Barnes*, 2013 IL App (1st) 120057-U. Two years ago, another division of this court reversed the circuit court's third-stage dismissal of defendant's postconviction petition and remanded the matter for a new trial. *People v. Barnes*, 2022 IL App (1st) 191100-U, ¶ 40. In doing so, the reviewing court concluded that appellate counsel provided ineffective assistance by not arguing that the trial court committed plain error by failing to instruct the jury on the justified use of deadly force to prevent a felony in defendant's dwelling. *Id.*

¶ 6            The court noted that, among other things, evidence at trial showed that at the time of the shooting, defendant lived in an apartment with his girlfriend and their two young children. *Id.*

Defendant's girlfriend testified that prior to the incident she had her brother change the locks on the apartment because she feared that someone had been inside on several occasions and had moved their belongings around. *Id*. Defendant's daughter testified that on the night of the shooting, she heard the front door creak as if someone were "messing" with it. *Id*. Defendant testified that "he suspected someone had picked the locks, the front door was ajar, McWright stood in front of it holding something, and [defendant] was fearful." *Id*.

¶ 7    In addition, at trial, firefighter "Dennis Scates testified that he responded to the shooting, and McWright stated that he 'went to work on a hot water heater, and [defendant] came down and said, I'm tired of this s***, and he shot me.' " *Barnes*, 2022 IL App (1st) 191100-U, ¶ 6. On cross-examination, "Scates further testified that McWright stated he went to fix defendant's hot water heater, 'went to the door,' and defendant 'came out and shot him.' " *Id.* As this court noted on direct appeal, "McWright's statement to Scates does not unequivocally place the shooting at the doorway to defendant's apartment. When McWright said defendant 'came out and shot him,' he could have meant that defendant came out of the two-flat to shoot him on the porch." *Barnes*, No. 1-09-1535, slip order at 13. McWright told police officers at the scene that defendant "ran inside" after shooting him. *People v. Barnes*, 2022 IL App (1st) 191100-U, ¶ 7. Several witnesses testified that they were across the street from the apartment building and "saw defendant shoot McWright on the porch at point-blank range" then turn and go inside as McWright fell against the porch railing. *Id.* ¶ 5. Police officers found blood on the front porch, but not inside the apartment building. *Id.* ¶ 8.

¶ 8    After finding that the conflicting evidence was sufficient to warrant an instruction on the defense of defendant's dwelling, the reviewing court held that the trial court's error in failing to instruct the jury on this defense amounted to second prong plain error because it severely

threatened the fairness of defendant's trial. *Id.* ¶ 48. The court held that the jury was not "fairly, fully and comprehensively" apprised of the relevant legal principles regarding the sole contested issue at trial (*id.* ¶ 48) and that it was therefore unaware that it "should (1) acquit defendant if the State failed to prove that his conduct was unjustified to prevent the commission of a felony within his dwelling, or (2) find defendant guilty of second degree murder if he unreasonably believed that shooting McWright was necessary to prevent a felony within his dwelling." *Id.* ¶ 51.

¶ 9        The reviewing court ultimately found that appellate counsel was unreasonable for failing to raise this issue on direct appeal and reversed and remanded the matter to the circuit court for a new trial. *Id.* ¶ 61. Since that remand, defendant has been detained in Cook County jail awaiting retrial.

¶ 10        On November 14, 2023, defendant filed the instant petition for pretrial release pursuant to section 110-7.5 of the Pretrial Fairness Act (725 ILCS 5/110-7.5 (West 2022)). In response, the State filed a verified petition requesting denial of pretrial release pursuant to sections 110-2, and 110-6.1(a)(1.5) of the Act (725 ILCS 5/110-2, 110-6.1(a)(1.5) (West 2022)).

¶ 11        The circuit court held a hearing on the two petitions on February 9, 2024. At that hearing, the State argued that the proof was evident and the presumption great that defendant committed the detainable offense of first-degree murder and that he posed a real and present threat to the safety of the community as well as a flight risk from prosecution. The State proffered that in September 2007, both defendant and McWright lived in the two-flat building located at 1424 North Larmie Avenue in Chicago. McWright, who was the building's maintenance man, lived on the first floor, while defendant, his girlfriend, and their children lived on the second floor. The building had a common entrance for all occupants. At approximately 8:30 p.m. on September 25, 2007, three witnesses standing at 1419 North Laramie Avenue heard a single gunshot from across the

street. Two of those witnesses looked across and observed the victim and defendant on the porch area in front of 1424 North Laramie. Following the gunshot, defendant was observed placing something into his waist area and heading towards the building entrance, while the victim bent over holding his stomach and then crossed the street to the three witnesses. At the scene, McWright told multiple witnesses that defendant had shot him and ran inside the building, and that defendant lived on the second floor. The police entered the building using McWright's keys, made their way to the second floor, and forcefully entered defendant's apartment. Nobody was inside, but a .357 revolver was recovered in the front bedroom.

¶ 12    McWright was taken to the hospital and died the next day. An autopsy determined that McWright died from a single gunshot wound and that the manner of death was homicide.

¶ 13    Between September 26, and October 2, the police unsuccessfully searched for defendant at his "known addresses," including his mother's house. Officers learned that defendant "now had his mother's cell phone and her vehicle." Defendant eventually arranged to turn himself over to the police on October 1, 2007, but failed to appear that day. Instead, he turned himself over to the police the following day, October 2, 2007.

¶ 14    Defendant was convicted of possession of a controlled substance with intent to deliver in 1999.

¶ 15    The State noted that during defendant's original trial, he admitted that he had shot and killed the victim and that the gun he used was obtained illegally since he was not permitted to own one as a convicted felon. The State argued that defendant should be detained pretrial because he posed a real and present threat to the safety of the community and was a flight risk. The State also argued that "no condition or combination of conditions" could "mitigate the risk of releasing this defendant."

¶ 16    In mitigation, defense counsel argued that the defense and the State had "dramatically opposed positions" regarding the events on the night of the shooting. According to defense counsel, at the original trial, defendant and his witnesses testified that their apartment had been broken into multiple times, that they had changed the locks on their front door, and that the only reason that defendant obtained the firearm was "to protect his family." These witnesses further testified that on the night of the shooting, defendant returned to his apartment with his children when "all of a sudden" one of the children heard a sound. Defendant claimed that he saw the front door of the apartment opening and, fearing that someone was invading the apartment with his children inside, fired a shot. Defense counsel argued that defendant's version of events was "more plausible than the State's" and the State failed to offer any motive as to why defendant would want to shoot the victim.

¶ 17    Defense counsel pointed out that the appellate court had recently reversed and remanded defendant's case for a new trial and argued that defendant was presently presumed innocent and there a presumption that he should be released pretrial. Defense counsel further argued that the State had not presented a "scintilla of evidence" that defendant was a flight risk or posed any real or present threat to anyone in the community. Defense counsel argued that the instant charge involved "a very unusual scenario," that defendant's only prior conviction was for a drug-related offense, and the State did not present evidence that defendant had ever threatened anyone or that he posed a danger to the community.

¶ 18    Moreover, defense counsel asserted that defendant had been a "model prisoner" for the last 16 years and had completed numerous certificates and courses while incarcerated, including the "Second Chance" behavioral modification program. Defense counsel stated that defendant's entire

family resides in Chicago, and he would live with his sister if released. Defense counsel asked the circuit court to impose "the least restrictive means in order to release [defendant] from custody."

¶ 19    At the conclusion of the hearing, the circuit court found that the State met its burden in proving by clear and convincing evidence that defendant committed first degree murder and that he posed a real and present threat to the safety of the community. In doing so, the court noted that it was familiar with the two versions of events presented at defendant's original trial because it had presided over defendant's postconviction proceedings. The court recalled that "there w[ere] transcripts" that it had reviewed "indicating this defendant's frustration" with McWright. The court also found that the State's proffer established that defendant was a convicted felon, who illegally armed himself and shot the victim on his front porch and therefore posed a clear and present threat to the community. The court added that based on defendant's "willingness to arm himself, frustrated or met with a neighbor known to him, and to shoot that individual who was unarmed at the time," there were no "less restrictive conditions that could be imposed that would protect the safety of the community."

¶ 20                                II. ANALYSIS

¶ 21    Defendant argues that the State failed to prove by clear and convincing evidence that "no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case."

¶ 22    Pursuant to article 110 of the Code, as amended, "[a]ll defendants shall be presumed eligible for pretrial release" and pretrial release may only be denied in certain statutorily limited situations. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: the proof is evident or the presumption great that the defendant has committed a

qualifying offense; defendant's pretrial release poses a real and present threat to the safety of any person or the community or that defendant is a flight risk; and that less restrictive conditions would not mitigate the real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e), (f) (West 2022).

¶ 23    The State bears the burden of proving by clear and convincing evidence that "no condition or combination of conditions" contained within section 110-10(b) of the Code could mitigate "the real and present threat to the safety of any person or persons or the community *** [or] the defendant's willful flight." 725 ILCS 5/110-6.1(e) (West 2022). If a defendant is detained, at each subsequent pretrial hearing, "the judge must find that the continued detention is necessary to avoid a real and present threat to the safety of any person or persons of the community based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022).

¶ 24    We review the trial court's ultimate determination regarding pretrial release for an abuse of discretion (*People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9)), while we review the trial court's factual findings under the manifest weight of the evidence standard (*People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8).[1] See also *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only when the court's judgment is fanciful, arbitrary, or unreasonable, or when no reasonable person would agree with the court's position. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding

---

[1] There has been considerable disagreement regarding which standard of review applies to pretrial detention orders. See, *e.g.*, *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18 (applying only an abuse of discretion standard); *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29 (applying exclusively a manifest weight standard); *People v. Sorrentino*, 2024 IL App (1st) 232363, ¶ 34 (reviewing the denial of pretrial release *de novo*, but findings of historical fact for manifest error). Our conclusion would be the same under any of these standards.

itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 25    Section 110-10(a) establishes a number of mandatory conditions that must be imposed for defendants released prior to trial. 725 ILCS 5/110-10(a) (West 2022). Section 110-10(b) provides a number of discretionary conditions that the trial court may impose, which include but are not limited to (1) restrictions on leaving Illinois without leave of court, (2) prohibitions on possessing firearms or other dangerous weapons, and (3) prohibitions on communicating with particular persons or classes of persons. 725 ILCS 5/110-10(b)(0.05), (2), (3) (West 2022). Section 110-10(b) also authorizes the trial court to impose "[s]uch other reasonable conditions" if those conditions are individualized and the least restrictive means possible to ensure defendant's appearance in court and compliance with pretrial release rules, court procedures, and criminal statutes. 725 ILCS 5/110-10(b)(9) (West 2022).

¶ 26    We find no abuse of discretion in the trial court's decision to deny pretrial release in this case. The State's proffer established that defendant, a convicted felon, shot and killed Regis McWright with an illegally obtained firearm. McWright had lived in the same apartment building as defendant for five years and served as the building's maintenance man. After shooting McWright, defendant fled the scene. He did not call 911. McWright "died that night from the gunshot wound" inflicted by the defendant, who "turned himself in to police five days later." *Barnes*, 2013 IL App (1st) 120057-U ¶¶ 4, 7.

Courts may consider "the nature and circumstances of the offense charged" and "the history and characteristics of the defendant" in determining whether the State established by clear and convincing evidence that no combination of conditions of release could mitigate defendant's threat to the community or prospect of willful flight from prosecution. 725 ILCS 5/110-5(a)(1), (3) (West

2022). Defendant, as a convicted felon, is explicitly prohibited from possessing a firearm by virtue of his status as a convicted felon. *People v. Davis*, 2023 IL App (1st) 231856, ¶ 28. Defendant's possession of a firearm "goes directly against the legislature's stated purpose of promoting and protecting the safety of the public from the unlawful possession of firearms by certain individuals." *Id.*

Another factor trial courts may consider is "the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release." 725 ILCS 5/110-5(a)(5). As noted herein, police officers attempted, without success, to locate defendant between September 26, 2007, and October 2, 2007, including surveilling defendant's known addresses. After arranging to turn himself in on October 1, 2007, defendant failed to do show up until the next day. This behavior demonstrates that defendant poses a risk of flight from prosecution, conduct which would potentially obstruct the criminal justice process.

¶ 27    We are not convinced by defendant's reliance on *People v. Stock*, 2023 IL App (1st) 231753. In this case, the trial court was presented with more than just "the bare allegations that defendant has committed a violent offense" found to be insufficient in *Stock*. *Id.* ¶ 18. Unlike in *Stock*, the State "explicitly offered evidence of the defendant's inability to conform his behavior to legal requisites which would be necessary for his compliance with any conditions of release set by the court." *People v. Brame*, 2024 IL App (1st) 240363-U, ¶ 52. The record in this case establishes that the trial court considered the nature of the allegations along with the circumstances surrounding defendant's arrest and his prior behavior before denying pretrial release.

¶ 28    Defendant also asserts that the trial court did not make the statutorily required "written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial

release, including why less restrictive conditions would not avoid a real and present threat." 725 ILCS 110-6.1(h)(1) (West 2022). This is borne out by the record. In space provided on the form order to describe why no condition or combination of conditions could mitigate the real and present threat, the court wrote only that "[Defendant] armed himself w[ith] a handgun shot an unarmed victim and fled the scene. [Defendant] was a convicted felon." Yet defendant has cited no authority showing that the remedy for this particular violation must be his "release under the least restrictive conditions."

¶ 29      In *Stock*, the trial court ordered the defendant to be detained. *Stock*, 2023 IL App (1st) 231753, ¶ 17. In the space provided on the form order to describe why no condition or combination of conditions could mitigate the real and present threat, the court wrote only that " 'The defendant shot a firearm at the complaining witness.' " *Id.* ¶ 8. The reviewing court found that the trial court's written order did not meet the statutory requirement of an explanation of why less restrictive conditions would not avoid a real and present threat. *Id.* ¶ 20 (citing 725 ILCS 5/110-6.1(h)(1)). It is important to note that in *Stock*, unlike in this case, the defendant had no other criminal history and was otherwise a "law-abiding member of the community." *Stock*, 2023 IL App (1st) 231753, ¶ 19.

¶ 30      Having already determined that evidence was insufficient to show no conditions of release were available, the reviewing court, as a remedy, reversed and remanded, directing the trial court to "enter an order consistent with this opinion with the caveat that we express no opinion about what conditions of pretrial release should or should not be imposed upon defendant and leave that to the discretion of the trial court." *Id.* ¶ 22.

¶ 31      We find the record in this case amply supports the determination that anything less than detention would not avoid a real and present threat to the community or flight from prosecution.

The trial court failed to make a sufficient "*written finding* summarizing [its] reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat." (Emphasis added.) 725 ILCS 5/110-6.1(h)(1). However, "the Act's purpose of protecting the public would be undermined by holding that this error alone compelled defendant's release." See *People v. Parker*, 2024 IL App (1st) 232275-U, ¶ 50 (citing *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 17). We reverse and remand solely for the trial court to comply with section 110-6.1(h)(1). While "nothing precludes the court from reevaluating whether release is appropriate, the record here does not compel that finding." *Id.*

¶ 32                                    III. CONCLUSION

¶ 33         For the foregoing reasons, we reverse and remand for further proceedings consistent with this order.

¶ 34         Reversed and remanded.

¶ 35         PRESIDING JUSTICE FITZGERALD SMITH, specially concurring:

¶ 36         I concur with the decision of the majority to reverse the detention order and remand this matter to the circuit court, with directions for the circuit court to enter an order articulating why no restrictions other than pretrial detention would mitigate the defendant's purported threat to the community.

¶ 37         I write separately because I believe that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the threat the defendant posed to the safety of the community (725 ILCS 5/110-6.1(e) (3) (West 2022)), and that this issue should therefore be reevaluated by the circuit court on remand.

¶ 38         At the outset, I disagree with the standard of review used by the majority and would instead apply an abuse of discretion standard across the board. *People v. Whitmore*, 2023 IL App (1st)

231807(B), ¶¶ 18-19; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. Nonetheless, regardless of the standard, my conclusion remains the same.

¶ 39        In my view, this case poses a very unique scenario.

¶ 40        The defendant was convicted of murder 16 years ago. Because at his original trial the defendant admitted to obtaining an illegal weapon to protect his family and to shooting the victim at point-blank range, the sole contested issue at trial was whether his actions were justified. The defendant's conviction has since been reversed and the case has been remanded for a new trial because this appellate court found that the jury in the original trial was not properly instructed on justification. As such, the defendant currently stands innocent of any crime.

¶ 41        The record further reveals that aside from the instant charges, the defendant's prior criminal background includes only one non-violent drug-related offense, committed in 1999, eight years prior to the instant offense.

¶ 42        What is more, after he voluntarily turned himself over to the police in 2007, and was originally charged, the defendant was permitted to remain free on bond, presumably because the circuit court believed that he was neither a flight risk, nor posed any threat to anyone in the community. The circuit court's faith in the defendant bore out, as during his original trial he appeared at every court hearing.

¶ 43        Even after incarceration, the defendant proved to be a model citizen, earning over 200 certificates only in the last two years.

¶ 44        Accordingly, aside from the simple fact that he spent the last 16 years of his life in prison, serving a sentence for a conviction that has since been overturned, the defendant stands in no different position than he did prior to his original trial, during which he was released on bond.

¶ 45  Nonetheless, at the detention hearing, the State offered no evidence or explanation whatsoever as to why, at this moment in time, no conditions could alleviate the defendant's purported threat to the community so as to permit his pretrial release, just like it could not 16 years ago. Instead, in its petition, the State merely checked off the box next to the preprinted rubric stating that "no condition or combination of conditions set forth in 725 ILCS 5/110-10(5) can mitigate that risk." Similarly, at the hearing, the State offered no evidence regarding the impracticability of any less restrictive conditions. Instead, the State's proffer focused solely on the defendant's commission of the detainable offense and the element of his clear and present danger to the community. Specifically, the State detailed the uncontested facts from the defendant's original trial to argue that he posed a clear and present threat to the community *i.e.*, that he fled the scene after he shot and killed the unarmed victim with the gun he obtained illegally as a prior convicted felon. At the end of this argument, almost as an afterthought, the State merely parroted the bare allegation of its petition, that it was its "position that no condition or combination of conditions" could "mitigate the risk of releasing this defendant."

¶ 46  While I agree that the State was not required to address every single potential condition for release detailed in section 110-10 of the Act (725 ILCS 5/110-10 (West 2022)) at a minimum it was required to present some discussion, reasoning and/or evidence as to why specific alternative conditions would not work at this time for this particular defendant. See *e.g.*, *People v. White*, 2024 IL App (1st) 232245; *People v. Turner*, 2024 IL App (1st) 232082-U, ¶ 21; *People v. Martin*, 2023 IL App (4th) 230826, ¶ 23; *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 32. This is especially true here, where the underlying facts of the case remain uncontested. If it were otherwise and "the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish" that no conditions could mitigate the threat posed, instead of creating a presumption of

entitlement to pretrial release, "the legislature would have simply deemed those accused of violent offense ineligible for release." *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18.

¶ 47    Under the unique set of circumstances presented here, I believe that the State's proffer fell short of the clear and convincing burden mandated by the statute. *In Re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12 ("Clear and convincing evidence" is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." It "is more than a preponderance but less than is required to convict an individual of a criminal offense." (Internal quotation marks omitted.))

¶ 48    Correspondingly, I believe that the circuit court's findings, which were premised solely on the State's recitation of the uncontested facts from the original trial, were arbitrary and unreasonable, and constitute an abuse of discretion. See *People v. Whitmore*, 2023 IL App (1st) 231807(B), ¶¶ 18-19; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11; *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009)) (An abuse of discretion occurs when the circuit court's " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court.' "); see also *People v. Vance*, 2024 IL App (1st) 232503, ¶ 27 ("Dangerousness and conditions are different factors and deserve separate consideration. [Citations.] We cannot emphasize enough here, as we have in the other cited cases, that merely reciting the threat that the defendant poses is not enough, by itself, to demonstrate why no set of *conditions* would suffice to *mitigate* that threat. Trial courts must address those factors separately on pain of reversal if they do not.")

¶ 49    As such, I would urge the circuit court on remand to reevaluate whether the State has presented sufficient evidence to establish that no condition or combination of conditions could mitigate the defendant's ostensible threat to the safety of the community.